HEANEY, Circuit Judge,
dissenting.
Reading the record in the light most favorable to Reed, his theory of recovery is that a pin and wire were missing from the gangway, leaving only a single pin and wire holding the step in place. When Reed reached the defective step, the remaining pin and/or wire broke,[5] causing the step to give way, resulting in Reed’s injury. The Supreme Court noted in Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 166, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), that vessel owners have a duty of exercising due care “under the circumstances.” In my view, these circumstances require vessel owners periodically to inspect a gangway for missing bolts and pins and a reasonable jury could conclude that ULS breached this duty.
If a pin or wire were in fact missing from a step in the gangway, a reasonable conclusion is that it should be replaced before the remaining pin and wire securing the step breaks. Rather than adequately determining the structural soundness of the gangway, however, a ULS inspection of a deployed gangway was limited to the actual use of the gangway and to a cursory visual inspection which was incapable of revealing whether all pins or wires were intact:
These particular pins or bolts which were missing are extremely difficult to see, and even if you look up under the step you can only see the washer and cotter key, and not the portion of the bolt or pin which passes through the ladder framing. If the bolt or pin broke in the area passing through the framing, there is no way one could see it. The same would apply if the gangway were in stowed position on deck, since the bottom sides of the steps face outboard. The best way, and for all practical purposes the only way, to properly examine the steps is by using them, which is always done by the ordinary seamen when they re-board the vessel immediately after mooring and the gangway has been put in place.
(Jt.App. at 25-26 (emphasis added).) As for inspections of non-deployed gangways, they are similarly ineffective at determining whether the gangway is missing pins or wires in that a ULS employee would “lean over the top of the gangway, which is about at chest level, crane [one’s] neck out, and [ ] look over and down at the folded up mechanism.” (Jt.App. at 56-57.)
Notwithstanding the fact that ULS had not inspected the underside of the gangway — the only place where similar defects would manifest themselves — before Reed’s accident, the majority concludes that because “at least some” of the pins can be visually observed in the course of ULS’s standard inspection practices and because those practices comport with the practices of other vessel owners, there is no breach of duty. I cannot accept that ULS satisfied its duty as a matter of law by its profoundly limited effort to determine the safety of the gangway in this case. While the specifics of a legally sufficient inspection will differ in each case, there can be no doubt that the duty of ULS involved more than a cursory visual inspection of the gangway at 3 a.m., use of the deployed *994 gangway, and occasional and incomplete inspections when the gangway was not deployed. At the very least, ULS was required periodically to inspect the gangway to insure that there were no missing pins or wires.
Because ULS admits that it fell far short of insuring that there were no missing pins or wires in the gangway, a reasonable jury could conclude that ULS breached its duty. Because summary judgment was therefore inappropriately granted, I respectfully dissent.

. An equally plausible theory is that the remaining bolt or pin became loose through wear and inattention from the vessel owners and fell out.